```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  -v-<br><br>FRANKLYN THEN,<br><br>       Defendant. | 24-cr-73 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

Defendant Franklyn Then faces a criminal indictment on one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). ECF No. 7. Before the Court are two defense motions: a motion to dismiss the indictment, contending that Section 922(g)(1) is unconstitutional in light of the Supreme Court's recent decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), filed on April 8, 2024, ECF No. 15; and a motion to suppress evidence that Then argues was the fruit of an unlawful warrantless search of his apartment, filed on April 5, 2024, ECF No. 10, and supplemented on April 17, 2024 with citations to police body camera footage, ECF No. 17. The Court heard oral argument on the motions on April 10, 2024, and the Government submitted written responses on April 17, 2024. ECF Nos. 18, 19. For the reasons explained below, the Court hereby denies both motions.

I.  <u>Motion to Dismiss the Indictment</u>

Then moves to dismiss the indictment because, he argues, "[a] lifelong, categorical ban on possessing a firearm following any felony conviction unconstitutionally infringes the Second Amendment and [his] Second Amendment rights because it is not consistent with this Nation's historical tradition of firearms regulation." ECF No. 15, at 1 (citing <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u>, 597 U.S. 1 (2022)). As Then acknowledges, however, the Court has already rejected this very argument in <u>United States v. Davila</u>, --- F. Supp. 3d ----, 2023 WL 5361799 (S.D.N.Y. Aug. 22, 2023). There, the Court held that Section 922(g)(1) survived <u>Bruen</u> for two independent reasons. First, <u>Bruen</u> did not disturb the Second Circuit's decision in <u>United States v. Bogle</u>, 717 F.3d 281 (2013) (per curiam), which "held that '§ 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons.'" <u>Davila</u>, 2023 WL 5361799, at *2 (quoting <u>Bogle</u>, 717 F.3d at 281-82). Second, even under <u>Bruen</u>'s analytical framework, the Government had "met its burden of demonstrating a historical tradition of firearms regulation that is sufficiently analogous to § 922(g)(1) to uphold the statute's legitimacy." <u>Id.</u> at *3.

Then effectively concedes that, given the Court's decision in <u>Davila</u>, the motion to dismiss the indictment must be denied. After acknowledging the Court's holding in <u>Davila</u>, Then states that the

2

motion is purely "for preservation purposes." ECF No. 15, at 1. Moreover, the motion makes no attempt to distinguish Davila or otherwise argue that the Court should reconsider its holding in that case. Accordingly, the Court denies the motion to dismiss the indictment.

## II. Motion to Suppress

Then seeks to suppress certain inculpatory statements he made to police -- admitting that he kept a gun in a bag underneath his bed -- as well as the gun itself, because he argues that both were fruits of an earlier warrantless search of his apartment that violated the Fourth Amendment.

### A. Factual Background

The relevant facts, derived from affidavits and body camera footage supplied to the Court, are as follows[1]:

Alone in his apartment shortly after midnight on September 24, 2023, Franklyn Then "heard yelling in the hallway" and banging on his door. ECF No. 11 ("Then Aff."), ¶ 3. He retrieved his gun "and stood by the door." Id. The coast seemed clear after a few minutes, so Then "decided to put the gun away." Id. As Then was doing so, his "hand slipped and the gun accidentally went off into the floor." Id. A bullet traveled through the floor of Then's apartment into the apartment below, leaving a hole in the ceiling

---

[1] Unless otherwise noted, the facts are undisputed for purposes of this motion.

of Then's downstairs neighbor. Naturally startled, Then's neighbor called the police, and somewhere in the range of 20 to 40 minutes later, the police knocked on Then's door. Id. ¶ 4; see ECF No. 17 ("Mem."), at 2 (noting that the time stamp of police body camera footage shows that police knocked on Then's door at approximately 12:45 a.m.).

Then opened the door and was greeted by several armed, uniformed police officers, one of whom asked if the officers could look around Then's apartment. Although Then stated he "wouldn't be comfortable with that" and one officer commented that Then "does not want to let us in," Then eventually agreed after one of the officers stepped into the apartment and asked two more times to look around. Id. at 3. That officer moved a metal dog bowl on the floor of the interior hallway, revealing a hole underneath the bowl in the corresponding location to the hole in the ceiling of the apartment below. At that point, Then told the officers he did not consent to a broader search of the apartment, and the officers handcuffed him. Without a warning under Miranda v. Arizona, 384 U.S. 436 (1966), two officers separately questioned Then, who remained handcuffed in the apartment, for a total of approximately 15 minutes.

After the 15-minute period of questioning at the apartment, the officers brought Then to a police precinct, where he was questioned by a detective. The detective eventually gave Then a

Miranda warning. After the warning and several questions, Then admitted he kept a gun in the apartment, consented to a full search of the apartment, and told the detective where in the apartment to find the gun. Although Then signed a consent form for the search, police still sought and obtained a warrant. The supporting affidavit for the warrant application explained that Then's downstairs neighbor heard a loud noise and saw a hole in her ceiling, and stated that a police officer, in responding to the neighbor's call and after receiving consent from Then to enter Then's apartment, personally observed a hole in the corresponding location on the floor of Then's apartment. ECF No. 20, Ex. A. At approximately 4:45 p.m. on September 24, 2023, police executed the warrant and found the gun exactly where Then said it would be.

B. Analysis

Then argues that because the initial warrantless search of his apartment -- when officers saw the hole in the floor -- violated his Fourth Amendment rights, the later "fruits" of that search, including Then's inculpatory statements at the precinct and the gun itself, must be suppressed. See Utah v. Strieff, 579 U.S. 232, 237 (2016). The Court rejects Then's argument at its starting premise: the brief and limited initial search of Then's apartment, warrantless though it was, comported with the Fourth Amendment.

In this regard, the parties hotly dispute whether Then "freely and voluntarily" consented to that initial search of his apartment or whether, instead, his agreement was "no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968); see id. at 548 ("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."). The Court need not settle this debate because, in any event, a warrantless search of Then's apartment was justified by exigent circumstances.

"The Fourth Amendment does not require law enforcement to obtain a warrant to search a home if exigent circumstances exist." United States v. Laurent, 33 F.4th 63, 95 (2d Cir. 2022).[2] "Such exigencies could include the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury." Riley v. California, 573 U.S. 373, 402 (2014). "In determining whether exigent circumstances existed, the core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action." Laurent, 33 F.4th at 95.

---

[2] Here and elsewhere, alterations, citations, and internal quotation marks are omitted unless otherwise indicated.

The exigencies of the situation facing the officers at Then's apartment are not hard to explain. In Laurent, the Second Circuit held that where "officers knew that only minutes before a shot had been fired from [a] locked room into [a] neighboring room," "exigency justified the officers' entry into the [locked] room and cursory investigation of the areas of the room that were out of view, where an injured person or a person representing a threat of harm could be." Id. Mere minutes before police arrived at Then's apartment -- roughly 20 minutes earlier, according to the uncontested representation of the Government at oral argument -- a bullet had been discharged into the apartment of Then's downstairs neighbor, through the ceiling. See Transcript of 4/10/2024 Pre-Trial Conference. It was not only reasonable, but prudent, for police to check the apartment immediately above -- which turned out to be Then's apartment -- to ensure no one was "seriously injured or . . . threatened with imminent injury." Riley, 573 U.S. at 402.[3]

---

[3] Then argues that the officers lacked probable cause to believe that he was not lawfully permitted to have a loaded firearm. See Mem. at 14. But under the circumstances -- in which a firearm was discharged from Then's apartment into his neighbor's -- that argument is beside the point. Lawful permission to possess a weapon is far afield from lawful permission to fire that weapon into a neighboring residence. And there is no serious dispute that the officers had probable cause to believe that a firearm was unlawfully discharged from Then's apartment.

7

Further supporting the reasonableness of the initial search here was its peaceful and limited nature. See United States v. Caraballo, 831 F.3d 95, 103 (2d Cir. 2016) ("In the context of warrantless searches, the ultimate touchstone of the Fourth Amendment is reasonableness, and the exigent-circumstances analysis is merely a finely tuned approach to Fourth Amendment reasonableness."). "[I]n making an exigency determination," the Second Circuit has "considered the degree to which the officers, in conducting the search, intruded on a defendant's privacy interests." Id. In particular, "whether the entry was forceful or peaceful can affect [the] finding." Id. "That the entry, though not consented, is made peaceably is relevant." Id. "The police, by identifying their mission, give the person an opportunity to surrender himself without a struggle and thus to avoid the invasion of privacy involved in entry into the home." Id.

Even assuming that police lacked consent to enter Then's apartment, they did so peaceably rather than forcefully. Moreover, rather than engage in a full search of the apartment, police verified that Then was alone and searched only as much as necessary to discern that the origin of the bullet did not pose a continuing danger. The full search, during which police found and seized the gun itself, came only after police received both a Mirandized consent from Then and a search warrant from a court. Because the initial warrantless search of Then's apartment was justified by

8

exigent circumstances -- and thus lawful under the Fourth Amendment -- the Court denies the motion to suppress the later fruits of that search.[4]

III. Conclusion

For the foregoing reasons, the Court denies the motion to dismiss the indictment and denies the motion to suppress. The Clerk is respectfully directed to close documents 9 and 15 on the docket.

SO ORDERED.

New York, NY
April 25, 2024

JED S. RAKOFF, U.S.D.J

---

[4] Then does not separately argue that, even if the initial warrantless search complied with the Fourth Amendment, there is a basis for suppressing his inculpatory statements or the gun.

9